UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NATIONAL LIFE INSURANCE COMPANY,

                    Impleader Plaintiff,

    -against-

ROBERT M. GOMEZ and FIRST COMMUNITY
JUDGMENT BANK OF ARKANSAS AS LEGAL
GUARDIAN OF THE ESTATES OF TTO and
CRO, MINORS,

          Interpleader Defendants and Claimant.
------------------------------------------------------------------X

**ANSWER TO INTERPLEADER COMPLAINT and REQUEST FOR DECLARATORY JUDGMENT**

1:15-CV-439[MSD/CFH]

        The defendant-claimant, ROBERT J. GOMEZ, incorrectly named herein as "Robert M. Gomez," by his attorney, KENNETH V. GOMEZ, ESQ., as his answer to the Interpleader Complaint, respectfully alleges as follows:

### JURISDICTION AND VENUE

        1.     Admits the allegations contained in paragraph "1" of the Interpleader Complaint.

        2.     Admits the allegations contained in paragraph "2" of the Interpleader Complaint.

### FACTUAL ALLEGATIONS

        3.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "3" of the Interpleader Complaint.

        4.     Admits the allegations contained in paragraph "2" of the Interpleader Complaint except denies that his middle initial is "M."

5. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "5" of the Interpleader Complaint.

6. Admits the allegations contained in paragraph "6" of the Interpleader Complaint.

7. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "7" of the Interpleader Complaint except admits that the late Jane H. Gomez (wife of Robert J. Gomez and the grandmother of TTO and CRO) had a life insurance (policy number NL2410927 – "the policy") with National Life Insurance Company ("National Life") insuring her life in the amount of $358,977, and refer the question of law as to the effective date of the policy to the Court.

8. Admits the allegations contained in paragraph "8" of the Interpleader Complaint but denies that the application for insurance designated TTO and CRO as the primary beneficiaries of the policy.

9. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "9" of the Interpleader Complaint.

10. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "10" of the Interpleader Complaint.

11. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "11" of the Interpleader Complaint except denies that Robert J. Gomez ("Robert") sent an email to the to agency on December 13, 2007.

12.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "12" of the Interpleader Complaint.

13.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "13" of the Interpleader Complaint.

14.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the Interpleader Complaint except admits that Jane H. Gomez ("Wife") and Husband did not have any children as a result of their marriage.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "15" of the Interpleader Complaint.

16.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "16" of the Interpleader Complaint.

17.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "17" of the Interpleader Complaint.

18.     Admits the allegations contained in paragraph "18" of the Interpleader Complaint.

19.     Admits the allegations contained in paragraph "19" of the Interpleader Complaint.

20.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "20" of the Interpleader Complaint.

21.     Admits the allegations contained in paragraph "21" of the Interpleader Complaint.

22. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "22" of the Interpleader Complaint except admits that Robert J. Gomez was the primary beneficiary of the policy.

23. Admits the allegations contained in paragraph "23" of the Interpleader Complaint.

24. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "24" of the Interpleader Complaint.

25. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "25" of the Interpleader Complaint.

26. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "26" of the Interpleader Complaint.

27. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "27" of the Interpleader Complaint.

28. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "28" of the Interpleader Complaint.

29. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "29" of the Interpleader Complaint.

30. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "30" of the Interpleader Complaint.

31. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "31" of the Interpleader Complaint.

### AS A FIRST AFFIRMATIVE DEFENSE

32. The Agent's change of the policy's beneficiary from "Robert M. Gomez" to TTO and CRO, and National Life's acceptance of the change, were ineffective and void because the manner in which the changes were made violated New York Estates Powers & Trust Law § 13-3.2(e).

33. As a result, Robert alone is the rightful beneficiary of the policy.

### AS A SECOND AFFIRMATIVE DEFENSE

34. The Agent's change the policy's beneficiary from "Robert M. Gomez" to TTO and CRO, and National Life's acceptance of the change, were ineffective and void because the manner in which the changes were made violated the Statute of Frauds (New York General Obligation Law § 5-701(a)).

35. As a result, Robert alone is the beneficiary of the policy.

### AS A THIRD AFFIRMATIVE DEFENSE

36. The Agent's change of the policy's beneficiary from "Robert M. Gomez" to TTO and CRO, and National Life's acceptance of the change, were ineffective and void because the manner in the changes were made violated New York Insurance Law § 3204(d).

37. As a result, Robert alone is the beneficiary of the policy.

### AS A FOURTH AFFIRMATIVE DEFENSE

38. The Agent's change of the beneficiary from "Robert M. Gomez" to TTO and CRO, and National Life's acceptance of the change, were ineffective and void

because the manner in the changes were made violated New York Insurance Law § 3204(f).

39.     As a result, Robert alone is the beneficiary of the policy.

### AS A FIFTH AFFIRMATIVE DEFENSE

40.     The Agent's attempt to change of the beneficiary from "Robert M. Gomez" to TTO and CRO, and National Life's acceptance of the change, were ineffective and void because the manner in which the grandchildren were designated as beneficiaries violated the express terms the policy.

41.     As a result, Robert alone is the beneficiary of the policy.

### FIRST COUNTERCLAIM

42.     Robert and Jane were married in August 2001 and were virtually inseparable until Jane's death on September 22, 2013.

43.     Although Robert was not a wealthy man, he paid for nearly all the expenses of the marriage, including the insurance premiums on the policy.

44.     In 2007, Robert purchased an insurance policy on his life that would, upon his death, pay 100% of the death benefit to Jane outright and without restriction.

45.     Jane's Last Will and Testament and Intervivos Trust, both dated September 21, 2007 ("Will & Trust"), disinherited her only child, Patrick O'Brien, who is the father of TTO and CRO.  The Will & Trust provided that all of the interest on the principle in the trust be paid to Robert, not less than quarterly, for life. In addition, Robert with the consent of the co-trustee was authorized to invade the trust principle as "necessary or advisable for his health,

education, support, and maintenance." Upon Robert's death, the balance in the trust, if any, would be shared equally among Jane's grandchildren.

46. Upon information and belief, on or about December 13, 2007, in the presence of insurance agent Kiran Bora (the "Agent"), Jane signed a written application for the policy in which she designated Robert as the sole beneficiary.

47. Upon information and belief, the Agent wrote in a report dated November 12, 2013 to National Life (the "Investigation Report"), that on or about December 13, 2007, before Jane left the Agent's office, Jane "decided to change her mind and wanted to change her beneficiaries [sic] to her grandsons."

48. The Investigation Report made no reference whether Jane wanted Robert or the grandchildren to be contingent beneficiaries.

49. Upon information and belief, the Agent was not licensed to sell life insurance in the State of New York in 2007 or 2008.

50. Upon information and belief, on or about December 13, 2007, while Jane was in the Agent's office, she did not delete her husband's name from the completed application. Nor did Jane add the names of her two grandchildren to the completed application.

51. On or about December 13, 2007, from the time Jane signed the completed application, to the time she left the Agent's office, she did not, nor did anyone else, change or amend the application.

52. The Agent alleged in the Investigation Report that on December 13, 2007, after Jane left his office on, the Agent received an email from Robert (the "Email"). The Agent

claimed that the contents of the Email caused him to cross out the name of "Robert M. Gomez" and designate TTO and CRO as the beneficiaries.

53. The Agent alleged in the Investigation Report that he wrote his initials "KB" on the application next to the crossed-out name of "Robert M. Gomez."

54. The Agent did not write his initials on the application next to the names of TTO nor CRO.

55. Upon information and belief, National Life produced counsel for Robert a copy of the Email that the Agent claimed he received on December 13, 2007. Contrary to the Agent's statements as expressed in the Investigation Report, the Email is dated December 18, 2007 and could not have been received by the Agent on December 13, 2007.

56. Upon information and belief, the date and time of the Email is December 18, 2007 at *4:02 PM.*

57. Upon information and belief, by December 18, 2007 at 4:02 PM, the Agent had already mailed the application to National Life and National Life had already *received* the application.

58. Upon information and belief, according to National Life's date and time stamp, National Life received the application on or about December 18, 2007 at *11:35 AM.*

59. Upon information and belief, the Agent could not have relied upon the contents of the Email to delete Robert's name and to add the grandchildren as beneficiaries because the Agent made already the changes to the application days before the Email was alleged to have been sent. (See, Interpleader Complaint at ¶ 11.)

60. In any case, an unsigned email from the spouse of an insured is insufficient to designate a beneficiary or to change the beneficiary to a life insurance policy.

61. At no time did the Agent obtain Jane's written and contemporaneous consent to remove Robert as the primary beneficiary.

62. At no time did the Agent obtain Jane's written and contemporaneous consent to add the two grandchildren as beneficiaries.

63. Upon information and belief, the Agent did not give written notice to Jane that he had crossed out Robert's name, as the sole beneficiary, and inserted the names of TTO and CRO.

64. At no time did National Life obtain Jane's written and contemporaneous consent to remove Robert as the primary beneficiary.

65. At no time did National Life obtain Jane's written and contemporaneous consent to have her two grandchildren replace Robert as beneficiary.

66. Upon information and belief, the Agent violated National Life's procedures of by the manner in which he amended the application.

67. Upon information and belief, the Agent violated the terms and conditions of the policy by the manner in which he amended the application.

68. Upon information and belief, the Agent violated New York State Law by the manner in which he amended the application.

69. Upon information and belief, National Life violated its procedures and the terms and conditions of the policy, including but not limited, by its failure to give proper notice to Jane regarding the change of beneficiary.

70. Upon information and belief, National Life appears to have violated New York State Laws by allowing its agent to delete a beneficiary and to designate beneficiaries without the written and contemporaneous consent of the insured.

71. National Life alleged that Jane signed a "Receipt for Policy" on or about March 25, 2008, however, the receipt does not indicate whether Jane received the policy, the Policy Summary, the Life Insurance Buyer's Guide, the IUL Buyer's Guide, something else entirely or nothing at all.

72. Upon information and belief, National Life possessed the application on or about December 18, 2007 but waited more than three months to provide Jane with a copy of the amended designation.

73. Assuming *arguendo*, that on or about March 25, 2007, National Life through the Agent provided a copy of the policy to Jane, the amended beneficiary page was not obvious but instead buried inside the 54-page policy.

74. Upon information and belief, the policy did not include a copy of the Email.

75. According to the records of National Life, on or about March 25, 2008, National Life through the Agent had Jane confirm in writing her request to reduce the death benefit from $750,000 to $358,997. To that end, the Agent had Jane sign a *Request to Amend a New Policy Application*, dated March 6, 2008. At the same time, Jane was not asked to sign nor did she sign a document to consent to the change of beneficiary from Robert to the grandchildren.

76. At the times including the day of Jane's death on or about September 30, 2013, the policy was owned by Jane, all of the premiums due on the policy had been paid and the policy was in full force and effect.

## PRAYER FOR RELIEF

**WHEREFORE**, defendant-claimant, Robert J. Gomez, incorrectly named herein as Robert M. Gomez, prays for entry of judgment against the interpleader plaintiff National Life Insurance Company, for the following:

1. Declaring the Agent's deletion of Robert M. Gomez's name as beneficiary and the Agent's insertion of the names of TTO and CRO as beneficiaries to be void and the policy reformed to reflect Robert J. Gomez as the sole beneficiary as designated by his wife Jane H. Gomez.

2. Declaring defendant-claimant, Robert J. Gomez, named herein as Robert M. Gomez, the true and lawful beneficiary of National Life Insurance Company insurance policy (NL2410927) proceeds in the amount of $358,977.00 together with applicable interest, and the registry of the Court or National Life Insurance Company, as the case may be, pay same to him.

3. Such other and further relief as this Court deems just and proper, together with the costs, disbursements of this action, and attorney's fees.

Dated: New York, New York
       June 22, 2015

LAW OFFICE OF KENNETH V. GOMEZ

BY: _____
    KENNETH V. GOMEZ (519461)

600 Third Avenue, Suite 1500
New York, NY 10016
(212) 953-3500
*Attorney for Defendant-Claimant Robert J. Gomez*

TO: McNamee, Lochner, Titus & Williams, P.C.
677 Broadway
Albany, NY 12207

*Attorneys for National Life Insurance Company*