UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NATIONAL LIFE INSURANCE COMPANY,

                Impleader Plaintiff,

-against-

ROBERT M. GOMEZ, individually, and as the
Executor of the ESTATE OF JANE H.
GOMEZ, and FIRST COMMUNITY
BANK OF ARKANSAS AS LEGAL
GUARDIAN OF THE ESTATES OF TTO and
CRO, MINORS,

        Interpleader Defendants and Claimant.
-----------------------------------------------------------------X

**FIRST AMENDED ANSWER TO INTERPLEADER COMPLAINT WITH COUNTERCLAIMS, and REQUEST FOR DECLARATORY JUDGMENT**

1:15-CV-439[MSD/CFH]

The defendant-claimant, ROBERT J. GOMEZ (Robert), incorrectly sued herein as "Robert M. Gomez," by his attorney, KENNETH V. GOMEZ, ESQ., as his answer to the Interpleader Complaint, respectfully alleges as follows:

## JURISDICTION AND VENUE

1. Admits the allegations contained in paragraph "1" of the Interpleader Complaint.

2. Admits the allegations contained in paragraph "2" of the Interpleader Complaint.

## FACTUAL ALLEGATIONS

3. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "3" of the Interpleader Complaint.

4. Admits the allegations contained in paragraph "4" of the Interpleader Complaint except denies that his middle initial is "M."

5. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "5" of the Interpleader Complaint.

6. Admits the allegations contained in paragraph "6" of the Interpleader Complaint.

7. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "7" of the Interpleader Complaint except admits that the late Jane H. Gomez (wife of Robert and the grandmother of TTO and CRO) had a life insurance ( #NL2410927)( the Policy) with National Life Insurance Company (National Life) insuring her life in the amount of $358,977 (reduced from $500,000 at the time of the Application), and refer the question of law as to the effective date of the policy to the Court.

8. Admits the allegations contained in paragraph "8" of the Interpleader Complaint but denies that the Application for insurance designated TTO and CRO as the primary beneficiaries of the policy.

9. Denies the truth of the allegations contained in paragraph "9" of the Interpleader Complaint.

10. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "10" of the Interpleader Complaint.

11. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "11" of the Interpleader Complaint except denies that Robert J. Gomez (Robert) sent an email to the agency on December 13, 2007.

12. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "12" of the Interpleader Complaint.

13. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "13" of the Interpleader Complaint.

14. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the Interpleader Complaint except admits that Jane H. Gomez (Jane) and Robert did not have any children as a result of their marriage.

15. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "15" of the Interpleader Complaint.

16. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "16" of the Interpleader Complaint.

17. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "17" of the Interpleader Complaint.

18. Admits the allegations contained in paragraph "18" of the Interpleader Complaint.

19. Admits the allegations contained in paragraph "19" of the Interpleader Complaint.

20. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "20" of the Interpleader Complaint.

21. Admits the allegations contained in paragraph "21" of the Interpleader Complaint.

22. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "22" of the Interpleader Complaint except admits that Robert J. Gomez was the primary beneficiary of the policy.

23. Admits the allegations contained in paragraph "23" of the Interpleader Complaint.

24. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "24" of the Interpleader Complaint.

25. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "25" of the Interpleader Complaint.

26. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "26" of the Interpleader Complaint.

27. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "27" of the Interpleader Complaint.

28. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "28" of the Interpleader Complaint.

29. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "29" of the Interpleader Complaint.

30. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "30" of the Interpleader Complaint.

31. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "31" of the Interpleader Complaint.

## AS A FIRST AFFIRMATIVE DEFENSE

32. Bora's removal of Robert's name from the Application and the insertion of the TTO and CRO's names were ineffective and void because Bora was without legal authority to delete or add beneficiaries.

33. The manner in which Bora changed the beneficiaries violated New York Estates Powers & Trust Law § 13-3.2(e), as interpreted by the New York Court of Appeals, in *Androvette v Treadwell*, 73 N.Y.2d 746 (1988).

## AS A SECOND AFFIRMATIVE DEFENSE

34. National Life's attempt to ratify Bora's deletion of Robert's name, and Bora's insertion of TTO and CRO's names was ineffective and void because the manner in which the changes were made violated New York Estates Powers & Trust Law § 13-3.2(e), as interpreted by the New York Court of Appeals, in *Androvette v Treadwell*, 73 N.Y.2d 746 (1988).

## AS AN FOR A THIRD AFFIRMATIVE DEFENSE

35. Bora's deletion of Robert's name and the insertion of TTO and CRO's names was ineffective and void because the manner in which the changes were made violated the Statute of Frauds (New York General Obligation Law § 5-701(a)).

## AS A FOURTH AFFIRMATIVE DEFENSE

36. National Life's acceptance the Application that contained Bora's deletion of Robert's name and the insertion of TTO and CRO's names was ineffective and void because the manner in which the changes were made violated the Statute of Frauds (New York General Obligation Law § 5-701(a)).

## AS A FIFTH AFFIRMATIVE DEFENSE

37. Bora's change of beneficiary from Robert to TTO and CRO was ineffective and void because the manner in which the Bora made the changes violated New York Insurance Law § 3204(f).

## AS A SIXTH AFFIRMATIVE DEFENSE

38. National Life's acceptance of the Application containing Bora's change of beneficiary was ineffective and void because the manner in which the changes were made violated New York Insurance Law § 3204(f).

## AS A SEVENTH AFFIRMATIVE DEFENSE

39. Bora's deletion of Robert's name as the primary beneficiary was ineffective and void because the manner in which the deletion was made violated the terms the Policy, including, but not limited to, the following: "The Agent taking this application has no authority to make, change or discharge any contract hereby applied for."

## AS AN EIGHTH AFFIRMATIVE DEFENSE

40. National Life's acceptance of the Application, as amended by Bora, was ineffective and void because the manner in which the amendments were made violated the

terms of the Policy, including but not limited to, the following: "The Agent taking this application has no authority to make, change or discharge any contract hereby applied for."

## AS A NINTH AFFIRMATIVE DEFENSE

41.     The Policy contained terms that appear to be contrary to New York State Insurance Department regulation 11 NYCRR 51.52 and the New York State statute, Insurance Law § 3204(d).

42.     Specifically, the Policy, at page 8, improperly states that "Acceptance of any policy issued on this application will ratify and will be notice of any change made."

43.     To the contrary, Insurance Department Regulation 11 NYCRR 51.52(f) demands: "No application shall contain an agreement that acceptance of any policy issued upon the application will constitute a ratification of any changes or amendments made by the insurer and inserted in the application, except in conformity with section 3204(d) of the Insurance Law."

44.     Section 3204(d) of the Insurance Law speaks in even broader terms, "No insertion in or other alteration of any written application for any such policy or contract shall be made by any persons other than the applicant without his written consent,…."

45.     Thus, *assuming arguendo*, National Life's claim that Jane ratified Bora's ineffective and void change of beneficiary, that was on a page buried inside a 75+ page Policy, is prohibited and without merit.

## AS A TENTH AFFIRMATIVE DEFENSE

46.     National Life should be equitably estopped from claiming that anyone other than Robert is the primary beneficiary of the Policy.

## FIRST COUNTERCLAIM BY ROBERT J. GOMEZ

47. Robert and Jane were married on or about September 1, 2001 and were virtually inseparable until Jane's death on September 22, 2013.

48. Although Robert was not a wealthy man, he paid for nearly all the expenses of the marriage, including the insurance premiums on the Policy.

49. At all relevant times, Bora and his colleague, Gary Scofield (Scofield), worked for NPA Financial at an office located at 325 Bay Road, Queensbury, State of New York, County of Warren, (the Office).

50. In early-to-mid 2007, Jane and Robert met with Bora and Scofield at the Office to purchase long care health insurance and life insurance.

51. At the end of the meeting, Scofield and Bora referred Jane and Robert to a local law firm (Law Firm) who would prepare Jane and Robert's wills and trusts.

52. On or about September 21, 2007, Jane signed a pour over will and an intervivos trust (Will and Trust) supervised at the Office by a lawyer from Law Firm and witnessed by Scofield and NPA Financial assistant Heather Giroux.

53. The terms of the Will and Trust disinherited Patrick O'Brien, Jane's only child, from a previous marriage, who is the father of TTO and CRO.

54. Further, the Will and Trust provided that after Jane's death, all of the accrued interest on the trust principle must be paid to Robert on a quarterly basis during his

lifetime. In addition, Robert had the right, with the consent of the co-trustee Sean Poole, CPA, to invade the principle if "necessary or advisable for [Robert's] health, education, support, and maintenance." Upon Robert's death, the balance of the trust principle, if any, would be shared equally among Jane's grandchildren. Copies of the Will and Trust, dated September 21, 2007, are annexed as Exhibit A and B, respectively, and incorporated here.

55. The Will and the Trust did not leave any money to TTO nor CRO at the time of Jane's death.

56. The rights of TTO and CRO and a third grandchild, born in October 2008, under the terms of the Will and Trust, were contingent and only vested upon Robert's death.

57. According to the Interpleader Complaint (Doc. 1), the Answer to Counterclaim (Doc. 12), and Bora's Report (collectively, National Life's Representations) on either December 13, 2007 or December 18, 2007, Jane and Robert met with Bora and Scofield at the Office to prepare Jane's Application. The Bora Report states that Jane wanted Robert to be her primary beneficiary. In response to Jane's request, Bora wrote "Robert M. Gomez, husband" in the Application to identify Robert as Jane's primary beneficiary.

58. According to National Life's Representations, when the application was completed, both Jane and Bora signed the Application. (See Application annexed as Exhibit "C" and incorporated here.)

59. It is not disputed that when Jane and Robert left the Office, Robert was the primary beneficiary named in Jane's completed and signed Application.

60. At the end of the December 2007 Meeting, Bora did not give Jane a copy of the signed Application before she left the Office.

61. According to the Bora Report, after Jane named her husband as the primary beneficiary and signed the application, Jane spontaneously "decided to change her mind and wanted to change her beneficiaries [sic] [to a $500,000 policy] to her [two] grandsons."

62. The Bora Report made no reference to whether Jane wanted Robert to remain the primary beneficiary, become a contingent beneficiary, or whether TTO and CRO should become primary beneficiaries or contingent beneficiaries.

63. The Bora Report does not attribute to Jane a clear and unequivocal statement that she wanted to revoke her designation of her husband as the beneficiary of what was at time contemplated to be a $500,000 life insurance policy.

64. The Bora Report does not state that Jane wanted TTO and CRO to split the death benefit equally.

65. Upon information and belief, at all relevant times in 2007 or 2008, Bora did not hold a license to sell life insurance in the State of New York.

66. Upon information and belief, at all relevant times in 2007 and 2008, Scofield did not hold a license to sell life insurance in the State of New York.

67. At no time at the December 2007 Meeting, did Jane delete her husband's name from the Application.

68. At no time at the December 2007 Meeting, did Jane add the names TTO and CRO to the Application.

69. Upon information and belief, during the December 2007 Meeting, at no time did Bora cross out Robert's name on the Application.

70. The Bora Report claimed that on December 13, 2007 (or perhaps December 18, 2007), after Jane and Robert left the Office, Bora received an email from Robert (the "Email").

71. Upon receipt of the Email, Bora alleged that he used the information in the Email to strike Robert's name from the Application.

72. Bora claimed he wrote the initials "KB" next to the crossed-out name of "Robert M. Gomez, husband."

73. Further, Bora then claimed that he added the names of TTO and CRO as 50-50 beneficiaries immediately to the right of Robert's crossed out name.

74. Bora admits he did not write his initials next to the name of TTO or CRO.

75. Jane's signature, Jane's initials, and Jane's handwriting do not appear anywhere on the page of the Application where Bora crossed out Robert's name and inserted the names of TTO and CRO.

76. According to National Life, the Email is dated December 18, 2007 and was sent on December 18, 2007 at *4:02 PM*.

77. Upon information and belief, National Life received the Application on or about December 18, 2007 at *11:35 AM*.

78. Nothing in the Email expressly authorized Bora to strike Robert's name from the Application.

79. Significantly, despite claims to the contrary, Bora did not use the information in the Email to write the names, dates of birth, or addresses of TTO or CRO in the Application.

80. At no time did Bora obtain Jane's contemporaneous signed consent to delete Robert's name from the Application.

81. At no time did Bora obtain Jane's contemporaneous signed consent to write the names, dates of birth and addresses of TTO and CRO in the Application.

82. Upon information and belief, at no time did Bora give Jane proper written notice that he had crossed out Robert's name.

83. Upon information and belief, at no time did Bora give Jane proper written notice that he had inserted names of TTO or CRO into the Policy.

84. At no time did National Life obtain Jane's contemporaneous written consent to remove Robert as the primary beneficiary.

85. At no time did National Life obtain Jane's contemporaneous written consent to have TTO and CRO replace Robert as the primary beneficiary.

86. Upon information and belief, Bora violated National Life's procedures when he amended the Application.

87. As a result, Bora's deletion of Robert's name was ineffective and void.

88. Bora's insertion of the names of TTO and CRO was also ineffective and void.

89. Upon information and belief, National Life violated the terms and conditions of the Policy by failing to give proper notice to Jane of the change in beneficiary.

90. Upon information and belief, National Life violated New York State law by allowing Bora to delete Robert's name and designate TTO and CRO as beneficiaries without first obtaining Jane's contemporaneous written consent.

91. National Life alleged that Jane signed a "Receipt for Policy" on or about March 25, 2008, however, the receipt does not indicate exactly what Jane received on that day, whether it was the Policy, the policy summary, a life insurance buyer's guide, a IUL buyer's guide, or something else entirely.

92. Upon information and belief, National Life possessed the Application no later than December 18, 2007 but waited more than three months to provide Jane with a copy of the amended designation.

93. Assuming *arguendo*, that on or about March 25, 2007, at the direction of National Life, Bora provided a copy of the policy to Jane, but the amended beneficiary page was buried inside the 54 or 76-page Policy.[1]

94. Upon information and belief, the Policy did not contain a copy of the Email upon which Bora and National Life rely.

95. New York State Insurance Law 3204(1) requires, "Every policy of life … Insurance … shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any writing, unless a copy of thereof is endorsed upon or attached to the policy of contract when issued."

96. It is undisputed that the Email was not written by Jane, who is the only person legally authorized to designate beneficiaries.

---

[1] Despite requests as far back as November 2013, National Life has not produce the original insurance policy not even a bound copy of the policy.

97. The Email contained only the names of TTO and CRO, and pedigree information, but not a statement by Robert that he knowingly waived all right, title and interest in the Policy

98. The Email does not instruct Bora to delete Robert's name from the Application.

99. The Email does not state that TTO and CRO are beneficiaries or that they are to split the Policy's proceeds 50% and 50%.

100. According to National Life, on or about March 25, 2008, National Life, through Bora, had Jane confirm in writing her request to reduce the death benefit from $500,000 to $358,997.

101. To that end, Bora had Jane sign a *Request to Amend a New Policy Application*, dated March 25, 2008.

102. Incredibly, on March 25, 2008, neither National Life nor Bora asked Jane to sign a *Request to Amend a New Policy Application* to confirm Jane's consent to Bora's change of beneficiaries.

103. Notably, on or about December 21, 2007, Scofield's assistant, Heather Giroux faxed a letter and a copy of the Email that NPA Financial's main office; the letter and the Email were received by National Life on or about December 24, 2007, the letter asked that the names of TTO and CRO be *added* to Jane's Application (italics added).

104. On March 25, 2008, neither National Life nor Bora asked that Jane initial the page where Bora deleted Robert's name and inserted the names of TTO and CRO.

105. At no time, after March 25, 2008, and continuing through the date of Jane's death on September 22, 2013, did National Life give written notice to Jane that Robert was not her primary beneficiary or that TTO and CRO were her primary beneficiaries.

106. At all relevant times, including the day of Jane's death, the Policy was owned by Jane, all of the premiums due on the policy had been paid, and the policy was in full force and effect.

**SECOND COUNTERCLAIM BY ROBERT J. GOMEZ**

107. Robert hereby incorporates each and every allegation within paragraphs "1" through "106" of the First Counterclaim by Robert J. Gomez with the same force and effect as if set forth herein.

108. For any reason the Court finds that Robert is not the primary beneficiary, Robert, pleading in the alternative, Robert respectfully requests this Court to apply the equitable doctrine of substantial compliance to Jane's conduct to hold that Jane did everything within her power to designate Robert as her primary beneficiary, but her efforts were thwarted, only by the unauthorized actions of others.

**THIRD COUNTERCLAIM BY ROBERT J. GOMEZ**

109. Robert hereby incorporates each and every allegation within paragraphs "1" through "108" of the First and Second Counterclaims by Robert J. Gomez with the same force and effect as if set forth herein.

110. Robert is the same individual as "Robert M. Gomez, husband," referred to in the Application.

111. The use of the letter "M" in the Application rather than the letter "J" appears to be a scrivener's error with no legal significance or effect.

## COUNTERCLAIM BY THE ESTATE OF JANE H. GOMEZ

112. The Estate of Jane H. Gomez hereby incorporates each and every allegation within paragraphs "1" through "111" of the Counterclaims by Robert J. Gomez with the same force and effect as if set forth herein.

113. On or about November 2015, Robert qualified as Executor of the Estate of Jane H. Gomez (the Estate). Annexed hereto as Exhibit "D" is a copy of the Temporary Letters of Administration issued to Robert by the Surrogate's Court of Saratoga County.

114. Pleading in the alternative, if the Court determines that Robert is not the beneficiary of the Policy, the Estate respectfully requests this Court to apply the equitable doctrine of substantial compliance to hold that Jane did everything within her power to designate Robert as her primary beneficiary, but her efforts were thwarted, by the unauthorized conduct of others.

## PRAYER FOR RELIEF

**WHEREFORE**, defendant and claimant, Robert J. Gomez, incorrectly sued herein as Robert M. Gomez, and the Estate of Jane H. Gomez, pray for entry of judgment against the interpleader plaintiff National Life Insurance Company, for the following:

1. Declaring the deletion of "Robert M. Gomez, husband" and the insertion of the names of TTO and CRO in the Application are ineffective and void and the policy is reformed to reflect husband Robert J. Gomez is the sole beneficiary, as first designated by his late wife Jane H. Gomez.

      2.     Declaring defendant and claimant, Robert J. Gomez, the true and lawful beneficiary of the proceeds of National Life Insurance Company's policy (#NL2410927), in the amount of $358,977.00 plus interest, and that the registry of the Court or National Life Insurance Company, as the case may be, pay same to him.

      3.     Such other and further relief as this Court deems just and proper, together with the costs, disbursements of this action, and attorney's fees.

Dated: New York, New York
       November 4, 2015

                                             LAW OFFICE OF KENNETH V. GOMEZ

                                             BY: _____
                                                  KENNETH V. GOMEZ (519461)
                                           600 Third Avenue, Suite 1500
                                           New York, NY 10016
                                           (212) 953-3500
                                           *Attorney for Defendant-Claimant Robert J. Gomez*

TO:    G. Kimball Williams, Esq.
        McNamee, Lochner, Titus & Williams, P.C.
        677 Broadway
        Albany, NY 12207

        *Attorneys for National Life Insurance Company*